Betty R. SMITH and John
L. Smith, Plaintiffs,

v.

BROWN & WILLIAMSON TOBACCO
CORP., individually and as successor in
interest to The American Tobacco Co.,
R.J. Reynolds Tobacco Co., Philip Morris, Inc., and Yong Yoon d/b/a Young's
Market, Defendants.

No. Civ.A. 97–2711 SSH.

United States District Court,
District of Columbia.

May 19, 1998.

Wayne R. Cohen, Thomas Joseph Simeone Cohen & Cohen, Washington, DC, for Betty R. Smith, John L. Smith.

Benjamin Sorrells Boyd, Piper & Marbury, Washington, DC, for Brown & Williamson Tobacco Corp.

Peter John Biersteker Jones, Day, Reavis & Pogue, Washington, DC, for R.J. Reynolds Tobacco Co.

David M. Malone, James K. Archibald, Venable, Baetjer, Howard & Civiletti, Washington, DC, for Philip Morris, Inc.

Mark Scott London, Christoper B. Mead, London & Mead, Washington, DC, for Yong Yoon d/b/a Young's Market.

### MEMORANDUM ORDER

HARRIS, District Judge.

Before the Court are defendants' joint motion to dismiss, plaintiffs' opposition thereto, and defendants' reply. The motivation for this case is injuries suffered by plaintiff Betty Smith allegedly caused by her smoking cigarettes manufactured by defendants Brown & Williamson Tobacco Corp., R.J. Reynolds Tobacco Co., and Philip Morris, Inc., (collectively the "tobacco companies").[1]

Compl. ¶ 8. Mrs. Smith alleges that she became addicted to cigarettes shortly after she began smoking in 1945 and that, as a result, she was unable to quit smoking until 1991. *Id.* ¶¶ 8–9. In the late 1980s, Mrs. Smith was diagnosed with emphysema, and in 1992 she was diagnosed with throat cancer. *Id.* ¶ 10. She and her husband, plaintiff John Smith, filed a six-count complaint in the Superior Court of the District of Columbia on October 10, 1997, alleging product liability, fraud, deceptive trade practices, and loss of consortium claims. *See id.* ¶¶ 15–54. On November 14, 1997, defendants removed the case to this Court.

Defendants' motion to dismiss contends that plaintiffs' claims are barred by the statute of limitations because plaintiffs knew or should have known of their claims at the very latest when Mrs. Smith was diagnosed with throat cancer in 1992. Plaintiffs submit that their claims did not accrue until 1997, when documents released by the tobacco companies showed that they had manipulated the amount of nicotine in cigarettes with the intent of creating and sustaining addiction among consumers or, in the alternative, that the doctrine of fraudulent concealment bars defendants from raising the statute of limitations as a defense. Upon consideration of the parties' submissions, the complaint, and other matters of public record, the Court grants defendants' motion with respect to Counts I–III of the complaint but denies defendants' motion with respect to Counts IV–VI. Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56," the Court nonetheless briefly sets forth its reasoning. *See* Fed.R.Civ.P. 52(a).

▮ A motion to dismiss should not be granted "unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In evaluating a motion to dismiss, the Court is limited to considering allegations in the

---

**1.** Mrs. Smith alleges that she purchased her cigarettes from defendant Yong Yoon from the early 1980s until 1991. Compl. ¶ 13.

complaint and matters of public record. *See Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 & n. 6 (D.C.Cir. 1993). The complaint is construed liberally in plaintiffs' favor, and plaintiffs are given the benefit of all inferences that can be derived from the facts alleged. *Kowal*, 16 F.3d at 1276; *Tele–Communications of Key West, Inc. v. United States*, 757 F.2d 1330, 1334–35 (D.C.Cir.1985). Although what constitutes the accrual of a cause of action is a question of law, the specific moment when accrual occurs is usually a jury question. *Diamond v. Davis*, 680 A.2d 364, 370 (D.C.1996). Accordingly, a court may dismiss a claim on statute of limitations grounds only if "no reasonable person could disagree on the date" on which the cause of action accrued. *Kuwait Airways Corp. v. American Security Bank, N.A.*, 890 F.2d 456, 463 n. 11 (D.C.Cir. 1989).

## I. Counts I–III—Product Liability Claims

██ Plaintiffs' product liability claims are governed by a three-year statute of limitations. *See* D.C.Code § 12–301(8) (1981). The parties agree that the "discovery rule" applies in this situation. Thus, the statute of limitations on plaintiffs' product liability claims accrued when plaintiffs knew or by the exercise of reasonable diligence should have known of Mrs. Smith's injury, its cause in fact, and some wrongdoing by defendants. *See Goldman v. Bequai*, 19 F.3d 666, 671–72 (D.C.Cir.1994); *Capitol Place I Assocs. L.P. v. George Hyman Constr. Co.*, 673 A.2d 194, 199 (D.C.1996). The nature of a cause of action dictates the amount of knowledge necessary to start the statute of limitations running. *See Richards v. Mileski*, 662 F.2d 65, 68–69 (D.C.Cir.1981).

██ It is clear from plaintiffs' complaint and matters of public record that plaintiffs knew or should have known of Mrs. Smith's injury and its purported cause at the latest in 1992. According to the complaint, Mrs. Smith was diagnosed with emphysema in the late 1980s and with throat cancer in 1992. Compl. ¶ 10. In addition, cigarette packages and billboard advertisements have carried the following warning (among others) since 1984: "SURGEON GENERAL'S WARNING: Smoking Causes Lung Cancer, Heart Disease, Emphysema, And May Complicate Pregnancy." *See* 15 U.S.C. § 1333. In light of these facts, no reasonable person could disagree that by 1992, plaintiffs should have been aware that Mrs. Smith's health problems were likely to have been caused by her smoking. *See Kuwait Airways*, 890 F.2d at 463 n. 11; *see also Allgood v. R.J. Reynolds Tobacco Co.*, 80 F.3d 168, 172 (5th Cir.) ("[T]he dangers of cigarette smoking have long been known to the community."), *cert. denied*, —— U.S. ——, 117 S.Ct. 300, 136 L.Ed.2d 218 (1996); *Arnold v. R.J. Reynolds Tobacco Co.*, 956 F.Supp. 110, 115 n. 8 (D.R.I. 1997) ("In the usual case, a smoker would be expected to draw the connection between such health problems and ... her cigarette use fairly quickly ....").

██ Moreover, plaintiffs knew or should have known in 1992 that Mrs. Smith's injuries were caused by "some wrongdoing" by defendants. *See Goldman*, 19 F.3d at 671–72. In order to initiate a product liability claim, a plaintiff must establish that (1) defendant was engaged in the business of selling the product that caused the harm; (2) the product was sold in a defective condition unreasonably dangerous to the consumer or user;[2] (3) the product was one which the seller expected to and did reach plaintiff without any substantial change from the condition in which it was sold; and (4) the defect was a direct and proximate cause of plaintiff's injuries. *See Witherspoon v. Philip Morris, Inc.*, 964 F.Supp. 455, 466 (D.D.C. 1997); *Warner Fruehauf Trailer Co. v. Boston*, 654 A.2d 1272, 1274 (D.C.1995). Even evaluating the complaint in the light most favorable to plaintiffs, no reasonable person

---

**2.** The District of Columbia applies a type of risk-utility balancing test to determine whether a product is "defective and unreasonably dangerous" within the meaning of product liability law. *See Warner Fruehauf Trailer Co. v. Boston*, 654 A.2d 1272, 1276 (D.C.1995). The law recognizes that "some products, even if perfectly designed and manufactured, cannot be made completely safe for their intended use;" in such cases the defect and unreasonable danger is the failure to attach adequate warnings. *McNeil Pharmaceutical v. Hawkins*, 686 A.2d 567, 578 (D.C.1996), *cert. denied*, —— U.S. ——, 118 S.Ct. 63, 139 L.Ed.2d 26 (1997).

could disagree that by 1992, plaintiffs should have been aware of sufficient wrongdoing by defendants in order to initiate a product liability cause of action; the combination of Mrs. Smith's condition and the mandatory cigarette warnings gave plaintiffs sufficient information to suspect that (1) defendants sold cigarettes, (2) cigarettes were sold in a defective condition that was unreasonably dangerous to the consumer; (3) the tobacco companies' cigarettes reached Mrs. Smith without any substantial change from the condition in which they were sold; and (4) they constituted a direct and proximate cause of plaintiffs' injuries. *See Warner,* 654 A.2d at 1274.

 Plaintiffs argue that they did not have reason to know of defendants' wrongdoing until June 21, 1997, when the tobacco companies' internal documents (which indicated that they knew that nicotine was addictive and that they manipulated the levels of nicotine) were made public. The fact that plaintiffs were not privy to this information in 1992 does not, however, change the fact that their product liability claims accrued, at the latest, in that year. Although the presumably addictive quality of cigarettes may lend credence to plaintiffs' argument that they are "unreasonably dangerous" products, in light of the fact that there were printed warnings that cigarettes caused lung cancer and emphysema well before 1992, plaintiffs should have been aware of sufficient facts supporting their theory that cigarettes were "unreasonably dangerous" for the statute of limitations to accrue.[3] *See Arnold,* 956 F.Supp. at 115–17 ("Once a smoker learns of an injury and draws the causal connection between the injury and cigarette use, the smoker knows all … she needs to know in order to commence a [product liability] action...."); *Baker v. A.H. Robins Co.,* 613 F.Supp. 994,

996–97 (D.D.C.1985) ("The fact that [plaintiffs] did not then comprehend the full extent of all possible *sequelae* does not matter, for the law of limitations requires only that [they] have inquiry notice of the existence of a cause of action...."). Thus, the Court dismisses Counts I–III of plaintiffs' complaint.[4]

## II. Counts IV–VI—Fraud, Deceptive Trade Practices, and Loss of Consortium

 A three-year statute of limitations also governs plaintiffs' claims of fraud, deceptive trade practices, and loss of consortium. *See* D.C.Code § 12–301(8). Defendants contend that these claims should be dismissed for the same reasons as plaintiffs' product liability claims. The timeliness of a claim, however, depends on the particular cause of action asserted; thus the fact that plaintiffs should have known of sufficient facts to bring their product liability claims in 1992 does not mean that their fraud claims are also barred. *See Hobson,* 737 F.2d at 35 (holding that "plaintiff must know facts giving notice of the particular cause of action at issue, not of just any cause of action"); *Richards,* 662 F.2d at 68–69. In order to state a claim for fraud in the District of Columbia, plaintiffs must establish (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) plaintiffs took action in reliance upon the representation. *Higgs v. Higgs,* 472 A.2d 875, 876 (D.C.1984); *Bennett v. Kiggins,* 377 A.2d 57, 59 (D.C. 1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978). The first element may be satisfied by nondisclosure or silence. *Bennett,* 377 A.2d at 59. Plaintiffs' fraud claim alleges that the tobacco companies have known since the 1950s that ciga-

---

**3.** The Court also rejects plaintiffs' contention that the doctrine of fraudulent concealment prevented the accrual of the statute of limitations. The doctrine of fraudulent concealment only tolls the running of the statute of limitations "[i]f the party asserting the statute of limitations is found to have fraudulently concealed *information needed to determine* whether there is a basis for litigation." *Bailey v. Greenberg,* 516 A.2d 934, 941 (D.C.1986) (emphasis added); *see also Hobson v. Wilson,* 737 F.2d 1, 35–37 & n. 113 (D.C.Cir. 1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct.

1843, 85 L.Ed.2d 142 (1985); *Estate of Chappelle v. Sanders,* 442 A.2d 157, 158 (D.C.1982) (noting that a "well-established defense to a claim of fraudulent concealment is that the plaintiff[s] knew, or by the exercise of due diligence could have known, that [they] may have had a cause of action" (internal quotation omitted)).

**4.** The Court notes that Yong Yoon is only named as a defendant in Count III of the complaint; thus there are no claims remaining against Yong Yoon.

rettes are addictive, cause cancer, and cause emphysema, and that the tobacco companies intentionally withheld this knowledge with the intent to deceive the public. *See* Compl. ¶¶ 36–42. Based on the documents which may properly be considered on a motion to dismiss, the Court cannot say, as a matter of law, that plaintiffs had sufficient knowledge of the facts to state a fraud claim prior to June 21, 1997, when plaintiffs claim they became aware of documents indicating the tobacco companies' knowledge and intentional nondisclosure of the addictive qualities of nicotine. *See* Compl. ¶ 14. Accordingly, defendants' motion to dismiss Counts IV–VI is denied.[5]

For all the foregoing reasons, it hereby is

ORDERED, that defendants' motion to dismiss is granted in part and denied in part. It hereby further is

ORDERED, that Counts I–III of plaintiffs' complaint are dismissed. It hereby further is

ORDERED, that defendant Yong Yoon d/b/a Young's Market is dismissed as a defendant in this case.

SO ORDERED.

---

**5.** This reasoning applies equally to plaintiffs' claims of deceptive trade practices and loss of consortium. A claim pursuant to the District's trade practices statute relying on affirmative statements or intentional omissions of material facts "is analogous to [a] fraud by nondisclosure claim," except that intent is not an element. *Witherspoon,* 964 F.Supp. at 464; *see also* D.C.Code § 28–3904(e) & (f). Plaintiffs' loss of consortium claim is derivative of plaintiffs' other claims, and therefore to the extent that plaintiffs claim loss of consortium due to defendants' fraud, Count VI survives. *See Meek v. Shepard,* 484 A.2d 579, 582 n. 6 (D.C.1984).